UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

MICHAEL JONES,

                 Defendant.

**DECISION AND ORDER**

15-CR-133S

On February 12, 2016, defendant Michael Jones ("Jones") filed omnibus pretrial motions. (Dkt. No. 20.) The motions included various non-dispositive motions related to production of pretrial discovery. The motions also contained a dispositive motion to suppress any evidence obtained during a series of events occurring on March 7, 2015 around 10:30 PM. The Government duly filed a response to Jones's motions. (Dkt. No. 24.)

The Court held oral argument on March 3, 2016. At oral argument, Jones told the Court that, apart from any obligations continuing into the future, he has received all the discovery that he sought and considers his non-dispositive motions fulfilled. Accordingly, the Court denies all of Jones's non-dispositive motions as moot.

Oral argument then proceeded to Jones's dispositive motion to suppress. The parties disagreed over whether any factual disputes exist and whether the Court should conduct a suppression hearing. The Court reserved decision as to whether to hold a hearing and what the scope of the hearing might be.

A brief recitation of the facts known so far will put the parties' dispute in context.  The events that generated this case started around 10:30 PM on March 7, 2015.  Around that time, Jones left his mother's residence at 139 Westminster Avenue in the city of Buffalo, New York.  Jones had his one-year-old child with him.  Jones placed his child in a car seat in his vehicle, a white 2015 Ford Explorer.  After waving goodbye to his mother, Jones started the vehicle.  The record so far is not clear as to where Jones had parked the vehicle—for example, in a driveway or curbside.  The record also does not clarify whether Jones parked the vehicle in any way that violated parking regulations, or whether the vehicle bore any indicia of violations of vehicle regulations.  According to Jones, he smelled "something unusual coming from the vents" (Dkt. No. 20-1 at 1); this might have occurred immediately after starting the vehicle and before the vehicle started moving.  The smell prompted Jones to exit the vehicle and to look under the hood.

Around the same time, Buffalo police officers apparently driving on routine patrol spotted Jones and the open hood of his vehicle.  The officers approached Jones to speak to him; the record is not clear from what distance they engaged Jones or whether they exited their vehicle right away.  The officers noticed that Jones had his left hand in his pocket.  Jones claims that he was protecting his hand from the cold weather; the officers became suspicious that he was hiding something.  The officers asked Jones to show his hands; Jones complied.  The

2

officers then asked Jones to approach their vehicle. Jones responded by running from the officers. While running away, Jones allegedly threw away a substance that the officers perceived as cocaine. The officers apprehended Jones a short time later; they found Jones to be in possession of crack cocaine. The early events in this case are important because Jones does not appear to be contesting that reasonable suspicion or a seizure occurred once he started fleeing the officers. Jones instead argues that the officers lacked a reason to stop him in the first place, showed authority to which he submitted, and poisoned any evidence gathered after that moment.

"[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (internal quotation marks and citations omitted). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage—as long as the police do not convey a message that compliance with their requests is required." *Id.* at 434–35 (citations omitted). The dividing line between consensual and compulsory interactions with officers has evolved as follows:

3

> A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned. When the actions of the police do not show an unambiguous intent to restrain or when an individual's submission to a show of governmental authority takes the form of passive acquiescence, there needs to be some test for telling when a seizure occurs in response to authority, and when it does not. The test was devised by Justice Stewart in *United States v. Mendenhall*, 446 U.S. 544 (1980), who wrote that a seizure occurs if "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," *id.*, at 554 (principal opinion). Later on, the Court adopted Justice Stewart's touchstone, but added that when a person has no desire to leave for reasons unrelated to the police presence, the coercive effect of the encounter can be measured better by asking whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.

*Brendlin v. California*, 551 U.S. 249, 254–55 (2007) (internal quotation marks and citations omitted).

Here, the record in its current state lacks enough information to allow the Court to determine whether Jones submitted to authority while under the hood of his vehicle and whether a reasonable person would have felt free to terminate the encounter at that point. The Government proffered at oral argument that the officers might have been willing to provide roadside assistance and then became concerned about suspicious behavior from Jones. Those assertions might be true, but the record currently contains no direct explanation for the initial encounter and how it unfolded. Depending on what additional details uncover, the request to Jones to show his hands could constitute a show of authority to

4

which Jones submitted. *Compare U.S. v. Baldwin*, 496 F.3d 215, 217 (2d Cir. 2007) (finding no submission to authority where officers "instructed Baldwin to show his hands, but he simply stared back and refused to comply") *with U.S. v. Dorlette*, 706 F. Supp. 2d 290, 299–300 (D. Conn. 2010) (granting a suppression motion where "the officers made 'a show of authority' by asking, without their weapons drawn, for the men to show their hands, but Dorlette did not yield to this show of authority. '[A] few seconds' later, the officers repeated the command with their weapons drawn, in response to which the men stopped and obeyed. At the latest, then, the stop—a seizure—occurred when the officers drew their service weapons. This stop was justified by neither the events preceding the officers' first show-hands order, nor between that order and their second show-hands order accompanied by drawn service weapons."). Other indicia of submission or non-submission might come to light. *Cf. Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 252 (N.D.N.Y. 2014) ("Even assuming that a reasonable person would not have felt free to leave when the officers shined their spot light on him, told him to stop, got out of the car, commanded that he show his hands, and even attempted to physically hold him when he and the officers slipped on the ice after Plaintiff began to flee, Plaintiff did not submit to this show of authority. Rather, it is undisputed that Plaintiff successfully fled when the officers first confronted him on Mumford Street. Like the defendant in *Baldwin*, Plaintiff did not submit to police authority and, therefore, no actionable Fourth

5

Amendment seizure occurred at the initial confrontation."); *U.S. v. Herring*, No. 07-CR-45A, 2008 WL 1986059, at *1 (W.D.N.Y. May 7, 2008) (Arcara, *C.J.*) ("In any event, the defendant initially ignored the officers' request to put his hands where they could see them and instead turned his back in an 'evasive manner' and walked away. Under clear Supreme Court precedent, the defendant was not 'seized' for Fourth Amendment purposes until he complied with the officers' show of authority."). Additionally, the record currently does not reveal whether Jones actually had anything in his hands once he showed them. If Jones had nothing in his hands then the record currently does not explain why the officers asked Jones to approach the patrol vehicle. A hearing will go a long way toward resolving where Jones falls compared to other Fourth Amendment case law.

As for the case law, the Government also will benefit from a hearing because a hearing will give it a chance to show why the case that it cited heavily at oral argument is applicable. As Jones noted at oral argument, there appears to be a critical difference between his case and *California v. Hodari D.*, 499 U.S. 621 (1991), and that difference leaps out of the opinion's first five sentences:

> Late one evening in April 1988, Officers Brian McColgin and Jerry Pertoso were on patrol in a high-crime area of Oakland, California. They were dressed in street clothes but wearing jackets with "Police" embossed on both front and back. Their unmarked car proceeded west on Foothill Boulevard, and turned south onto 63rd Avenue. As they rounded the corner, they saw four or five youths huddled around a small red car parked at the curb. When the youths saw the officers' car approaching they apparently panicked, and took flight.

*Hodari D.*, 499 U.S. at 622–23.  That case proceeded from routine patrol directly to flight from police officers.  Jones's case contains an intervening (and alleged) show of hands and submission to authority.  If the facts of this case wind up pointing in the direction of a seizure at the hood of Jones's vehicle then *Hodari D.* loses relevance.  How *Hodari D.* ultimately affects Jones must await the outcome of the hearing.

    For all of the foregoing reasons, then, the Court finds that a hearing is necessary for Jones's dispositive motion.  The scope of the hearing will be the chronology and details of events between Jones's departure from his mother's house and the start of his flight from the officers.  The hearing will occur on **April 7, 2016 at 10:00 AM**.  Speedy-trial time remains excluded under 18 U.S.C. § 3161(h)(1)(D) because Jones's suppression motion remains pending.

    SO ORDERED.

                                         /s Hugh B. Scott
                                   HONORABLE HUGH B. SCOTT
                                   UNITED STATES MAGISTRATE JUDGE

DATED: March 4, 2016