UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.                                                       **DECISION AND ORDER**
                                                           15-CR-133S

MICHAEL JONES,

           Defendant.

---

## I. INTRODUCTION

Defendant Michael Jones is charged in a one-count indictment with possession of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(C). (Docket No. 1.)

Presently before this Court is the Report and Recommendation of the Honorable Hugh B. Scott, United States Magistrate Judge, filed August 16, 2016 (Docket No. 37), recommending that Jones's Motion to Suppress Evidence (Docket No. 20) be granted. The government timely filed objections to the Report and Recommendation on September 30, 2016. (Docket No. 43.) Jones responded on October 14, 2016. (Docket No. 46.) This Court thereafter took the matter under advisement without oral argument.

For the reasons discussed below, having considered Judge Scott's Report and Recommendation, the parties' submissions, and the transcript of the suppression hearing (Docket No. 31), this Court will set aside Judge Scott's Report and Recommendation, grant the government's objections, and deny Jones's motion to suppress.

## II. BACKGROUND

After a foot chase through the snow the night of March 7, 2015, Buffalo police officers apprehended Defendant Michael Jones, who was in possession of a black bag containing rocks of crack cocaine. (Tr. at 7, 14, 28.[1]) Jones's encounter with police that night and the discovery of the crack cocaine became the subject of pretrial litigation when Jones moved to suppress the evidence as obtained in violation of his Fourth Amendment rights. (Docket No. 20.) Judge Scott conducted a hearing on April 7, 2016, at which Buffalo police officers William Robinson and Anniel Vidal testified. (Docket No. 29.)

Following the hearing and post-hearing briefing, Judge Scott recommended that Jones's motion to suppress be granted. (Docket No. 37.) In particular, Judge Scott found that Officers Robinson and Vidal lacked reasonable suspicion to seize Jones, which Judge Scott found occurred the moment that Jones complied with Robinson's order to show his hands. The government objects to both Judge Scott's lack-of-reasonable-suspicion finding and his determination that Jones was seized for Fourth Amendment purposes the instant he showed his hands.

The following facts are drawn from the hearing before Judge Scott.

On March 7, 2015, at 10:45 p.m., Buffalo police officers William Robinson and Anniel Vidal were on routine patrol in the City of Buffalo, N.Y., when they came upon a vehicle parked on Westminster Avenue with its hood open. (Tr. at 6-9, 15, 22, 24.) Both officers were assigned to the Housing Unit. (Tr. at 6, 7, 14, 22.) Robinson had been a

---

[1]Transcript references (Tr. at __) are to the hearing transcript filed at Docket No. 31.

police officer for eight years; Vidal had been a police officer for at least four years.[2] (Tr. at 7, 14, 23.)

As the officers approached, they could see Jones on the passenger side of the vehicle, along the curb, by the front wheel well, hunched over the open hood. (Tr. at 9, 18, 24, 31.) He appeared to be working on the vehicle. (Tr. at 9, 24, 29.)

Robinson, who was driving, pulled the marked police cruiser along side Jones's vehicle, so that the two cars were faced in opposite directions, driver's side to driver's side. (Tr. at 9, 10, 17-18, 25, 30.) The moment Jones saw the police cruiser, he concealed his hands and turned his body away from the officers. (Tr. at 10, 25, 26, 30, 31.) Through the open window of his vehicle, Robinson asked Jones what he was doing. (Tr. at 10, 11-12, 17.) Jones hesitated and turned or "bladed" himself away from the officers as if he was hiding something. (Tr. at 10, 11, 18.)

At this point, Robinson ordered Jones to show his hands. (Tr. at 12, 19, 26, 32.) Robinson testified that Jones "kind of raised his hands, but he kept his elbows to his side, but his hands coming up and you could see that he was still kind of - - I don't know, tucking or hiding something on his side." (Tr. at 12.) Vidal testified that Jones "did make the motion to show his hands, but at the same time he kept his elbows close to his body, bringing his hands up slightly." (Tr. at 26.) Both officers testified that Jones's response was unusual and awkward, but they each considered him to have complied with Robinson's order to show his hands. (Tr. at 12, 19, 20, 26, 32, 33.)

There is a discrepancy as to whether Robinson also ordered Jones to approach the

---

[2] Vidal testified that he had been a police officer in the Housing Unit for four years. (Tr. at 23.) He was not asked how long he had been a police officer overall.

police cruiser at the time he ordered him to show his hands. Robinson testified that he did not think he ordered him to approach. (Tr. at 21.) Vidal testified that he did not remember whether Robinson ordered him to approach. (Tr. at 33.) The felony complaint, however, indicates that Robinson ordered Jones to approach the cruiser. (Tr. at 34.) Vidal testified that Robinson likely ordered Jones to approach in conjunction with ordering him to show his hands. (Tr. at 34.) It does not appear, however, that Jones ever approached the cruiser.

In any event, a "split second" after Jones showed his hands, he fled on foot. (Tr. at 12, 20, 21.) He fled when Robinson, who thought Jones was acting suspiciously, began to open his door to exit the cruiser. (Tr. at 12, 20-21, 26, 33, 34.) Once Jones started running, Vidal exited the cruiser and chased him. (Tr. at 12, 27, 34.) Robinson gave chase in the police cruiser. (Tr. at 12-13.) During the chase, Jones discarded a substance that blew into Vidal's face. (Tr. at 13, 27.) When Vidal finally apprehended Jones, he discovered a black bag containing rocks of crack cocaine. (Tr. at 14, 27-28.)

### III.  DISCUSSION

The salient issue before this Court is determining when Jones was seized for Fourth Amendment purposes, because that is the point from which the existence of reasonable suspicion must be measured. See United States v. Freeman, 735 F.3d 92, 96 (2d Cir. 2013) ("As an initial matter, we must first determine when exactly the police seized Freeman, in order to assess whether there was reasonable suspicion for the stop . . . ."); see also United States v. Simmons, 560 F.3d 98, 107 (2d Cir. 2009) (noting that "[t]he grounds for a stop must exist at the time of the seizure"). Because this Court finds that Jones was not seized until he was apprehended by Vidal after the foot chase, it need not

resolve whether there earlier existed reasonable suspicion to order Jones to show his hands.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend IV. Seizure occurs within the meaning of the Fourth Amendment when "by means of physical force or show of authority," a law enforcement officer "has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 201 L. Ed. 2d 889 (1968); see Florida v. Bostick, 501 U.S. 49, 434, 111 S.Ct. 2382, 115 L. Ed. 2d 389 (1991) (noting that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions . . . . Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred"). The test has an objective component: an individual can be considered seized when "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L. Ed. 2d 497 (1980). This, however, is "a necessary, but not a sufficient, condition for seizure." California v. Hodari D.,499 U.S. 621, 628, 111 S.Ct. 1547, 113 L. Ed. 2d 690 (1991).

When an individual claims to have been seized by a police officer's "show of authority," a seizure does not occur unless the individual yields to that show of authority. See California v. Hodari D, 499 U.S. at 626; see also Brendlin v. California, 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L. Ed. 2d 132 (2007) ("A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth

Amendment is concerned.").

The submission to authority cannot be temporary; an individual must actually submit to the police authority. See United States v. Baldwin, 496 F.3d 215, 218 (2d Cir. 2007) ("to comply with an order to stop—and thus to become seized—a suspect must do more than halt temporarily; he must submit to police authority, for 'there is no seizure without actual submission'") (quoting Brendlin, 551 U.S. at 254); see also United States v. Valentine, 232 F.3d 350, 359 (3d Cir. 2000) (finding no submission to authority "in any realistic sense" when individual paused for a few moments and gave his name to officers before fleeing); United States v. Hernandez, 27 F.3d 1403, 1407 (9th Cir. 1994) (finding no submission to authority where individual hesitated for a moment and made eye contact with officer before fleeing); United States v. Huertas, Crim. No. 3:14cr141 (JBA), 2015 WL 1517403, at *3 (D. Conn. Apr. 1, 2015) (finding no submission to authority when individual holding a bag containing a firearm submitted briefly to police questioning but then paused and fled when the police officer asked him what was in the bag and began to get out of his police cruiser).

To determine whether conduct constitutes actual submission to police authority, courts must examine "'the totality of the circumstances—the whole picture.'" Baldwin, 496 F.3d at 219 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L. Ed. 2d 621 (1981)). In this regard, "it is the nature of the interaction, and not its length, that matters." Id. (citing Delaware v. Prouse, 440 U.S. 648, 655, 99 S.Ct. 1391, 59 L. Ed. 2d 660 (1979)).

Jones argues that he was seized when he showed his hands in response to Robinson's directive. Even assuming that a directive to show one's hands is a sufficient show of authority to effectuate a Fourth Amendment seizure (the government argues that

it is not), Jones did not fully submit to that directive.  Much like the case in Baldwin, Jones's conduct can be characterized as "evasion of police authority, not submission."  Baldwin, 496 F. 3d at 219.

When Robinson directed Jones to show his hands, Jones responded in an unusual manner.  He did not display his hands and arms in a way that made clear to officers that he neither posed a threat nor concealed anything.  Rather, he complied awkwardly, keeping his elbows tight to his body and bringing his hands up only slightly.  A split second later he ran.

In this Court's view, although Jones may have flashed his open hands at the officers momentarily, his submission to Robinson's show of authority was only fleeting.  He did not fully and actually submit.[3]  Rather, he momentarily showed his hands and then immediately ran.  (Tr. at 20, 21, 26, 33, 34.)  Jones's submission to authority was temporary, at best, which means it does not constitute a seizure within the meaning of the Fourth Amendment. See Baldwin, 496 F.3d at 219 ("Because Baldwin's momentary stop did not constitute submission to police authority, he had not been seized within the meaning of the Fourth Amendment.").  Consequently, Jones was not seized until Vidal apprehended him after the foot chase, and there is no argument that reasonable suspicion was lacking at that time. See Hodari D., 409 U.S. at 629 (holding that individual involved in foot chase with police is seized when tackled); United States v. Swindle, 407 F.3d 562, 572 (2d Cir. 2005) (finding that the defendant was "not seized until the police physically apprehended him").  Jones's

---

[3]To the extent Robinson also ordered Jones to approach the police cruiser, and assuming for the sake of argument that such an order would constitute a sufficient show of authority, there is no evidence that Jones actually submitted to that directive either.

7

motion to suppress evidence must therefore be denied.

## IV.  CONCLUSION

Having reviewed Judge Scott's Report and Recommendation *de novo,* after considering the Objections and the parties' submissions, see 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b); Local Rule 72.3(a), this Court sets it aside, consistent with the foregoing decision.  Jones's Motion to Suppress is denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that the Report and Recommendation (Docket No. 37) is SET ASIDE, consistent with the foregoing decision.

FURTHER, that the Government's Objections (Docket No. 43) are GRANTED.

FURTHER, that Defendant's Motion to Suppress (Docket No. 20) is DENIED.

SO ORDERED.

Dated:   December 13, 2016
        Buffalo, New York

    /s/William M. Skretny
    WILLIAM M. SKRETNY
    United States District Judge